UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| VIRGINIA S GASTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-358 TLS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On August 10, 2009, Plaintiff, Virginia Gaston ("Gaston"), filed her complaint in this Court. On August 13, 2009, this matter was referred to the undersigned to conduct such proceedings as necessary to enter a report and recommendation. On November 30, 2009, Gaston filed an opening brief asking this Court to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On March 16, 2010, Defendant, Commissioner of Social Security ("Commissioner"), filed its response. Gaston did not file a reply brief. The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.  PROCEDURE**

On January 22, 2004, Gaston filed her application for Disability Insurance Benefits. Gaston is insured for Disability Insurance Benefits through December 31, 2007. Gaston claims she is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. § 423.

On July 6, 2006, Gaston appeared at a hearing before an Administrative Law Judge ("ALJ") claiming disability due to accident-related brain and hip injuries, and depression and

1

anxiety. On March 12, 2007, the ALJ found that Gaston was not disabled. On March 20, 2007, Gaston appealed the ALJ's decision to the Appeals Council. On July 18, 2007, the Appeals Council remanded the case back to the ALJ for a second hearing.

On January 10, 2008, Gaston appeared before the ALJ for a second hearing. On January 20, 2009, the ALJ issued a second opinion. On January 23, 2009, Gaston appealed the ALJ's second opinion to the Appeals Council. On June 30, 2009, the Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on August 10, 2009, Gaston filed a complaint in this Court seeking a review of the ALJ's decision.

This Court may enter a report and recommendation in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Gaston was 52 years old at the time of her second hearing before the ALJ. Gaston has past relevant work as a business office manager and has performed accounting duties for a bank and a municipality. In addition, Gaston has work experience providing office support for accounting for the Timberland company, though Gatson disputes whether this job qualifies as substantial gainful activity and past relevant work.

#### 1. Medical Evidence

Gaston began seeking mental health treatment at least a year prior to her alleged onset date. In September 2002, Gaston was diagnosed with major depression, psychotic, recurrent and severe. On September 16, 2002, Gaston was admitted to St. Joseph Behavioral Health due to

suicidal ideations. Gaston was discharged after one week but was readmitted only a week later. After her release, Gaston saw Dr. Rathbun regularly for depression management through March 2003 and attended outpatient treatment. On March 6, 2003, Gaston was admitted to St. Joseph again for suicidal ideations. During her stay, Gaston with diagnosed with recurrent major depression and anxiety.

On March 20, 2003, Gaston's alleged onset date, Gaston was admitted to the hospital after being in a car accident. Gaston suffered head trauma and fractures to her spine, hip, femur and kneecap and underwent numerous surgeries. Nearly a month later, on April 9, 2003, Gaston was discharged to a rehabilitation hospital where she spent two weeks recovering.

In May 2003, Dr. Hedrick, noted that all of Gaston's fractures were healing well. Dr. Hedrick reported that Gaston had an antalgic gait, a reduced range of motion in her left shoulder, and some reports of pain in her left knee and left hip. However, Dr. Hedrick noted that Gaston had intact sensation and strength and had no other symptoms commonly associated with a traumatic brain injury.

In September 2003, Dr. James Dozier reported that Gaston's neck injury had dramatically improved with physical therapy and noted that Gaston was essentially pain-free. Also in September 2003, Dr. Hedrick diagnosed Gaston with tendinitis and bursitis in her left shoulder and post-traumatic osteoarthritis in her left shoulder and knee. Gaston was prescribed a treatment of steroid injections and anti-inflammatory medication.

On March 29, 2004, consulting physician, Dr. Phillip Budzenski, examined Gaston's physical limitations. Dr. Budzenski noted that Gaston denied suicidal ideation, did not appear to be overly depressed, displayed an intact memory and normal intellectual functioning, and

indicated that she performed basic activities of daily living. Dr. Budzenski observed that Gaston walked with a mild antalgic gait, had mild to moderate crepitus and laxity in her left knee, had decreased range of motion in her left shoulder. However, Dr. Budzenski also noted that Gaston had full grip strength and normal sensation, reflexes and motor strength. Dr. Budzenski opined that Gaston could walk 15 minutes or stand 30 minutes out of each hour, could sit for eight hours in an eight-hour workday, and could lift, carry, push, or pull 10 pounds frequently and 20 pounds occasionally. On April 12, 2004, state agency physician, Dr. Lopez, completed a residual functional capacity ("RFC") assessment, in which he opined that Gaston could perform medium work, could occasionally reach with her left upper extremities, and could occasionally climb ladders, ropes, or scaffolds. On July 9, 2004, reviewing state agency physician, Dr. Dobson, reviewed the evidence in Gaston's file and affirmed Dr. Lopez's opinion as written.

On April 22, 2004, consulting psychologist, Dr. Robert Fischer, evaluated Gaston's mental limitations. Dr. Fischer noted that Gaston's concentration was reportedly adequate, and that her sleep was reportedly adequate with medication. He further noted that medication had eased Gaston's generalized anxiety symptoms. Dr. Fischer diagnosed Gaston with a recurrent, moderate to severe major depressive disorder and assigned Gaston a GAF score of 68, indicating mild symptoms or functional limitations. On April 27, 2004, state agency psychiatrist, Dr. W. Shipley, opined that Gaston's major depressive disorder mildly limited her activities of daily living; social functioning; and concentration, persistence, or pace. On July 9, 2004, reviewing physician, Dr. Evans, affirmed Dr. Shipley's opinion as written.

On April 14, 2004, Gaston saw Dr. Lyons, her family physician, and reported that she was gradually improving, no longer used a cane or walker for walking, and did not take any

4

prescription pain medications. Gaston further indicated that she slept well with Ambien and Remeron. However, Gaston reported fatigue and indicated that she could only be "up and about doing things" for four to five hours before she needed to rest. Dr. Lyons opined that Gaston was progressing slowly but consistently and was doing very well overall.

On June 18, 2005, Gaston went to the emergency room, stating that she was emotionally broken down and "at her wit's end" after not sleeping for five nights. The attending physicians diagnosed Gaston with depression and signs of suicidal ideation but did not admit Gaston for inpatient treatment. Instead, Gaston was referred to a local mental health center. Gaston went to the center but left after receiving no significant care. Two days later, on June 20, 2005, Gaston reported to Dr. Lyons that her insomnia had subsided the last two nights and that she was scheduled for follow up counseling. On June 29, 2005, however, Gaston complained to Dr. Hedrick of severe insomnia.

In December 2005, Gaston complained of poor sleep but indicated no problems with pain or depression. As a result, Gaston's requested, and Dr. Hedrick consented, that Gaston return on only an as-needed basis and primarily follow up with Dr. Lyons.

Nearly a year later, on March 3, 2006, Dr. Lyons opined that Gaston's depression and anxiety markedly limited her ability to understand and carry out detailed instructions and limited her ability to respond appropriately to work pressures. In addition, Dr. Lyons indicated that Gaston's conditions moderately limited her ability to carry out simple instructions and to interact appropriately with supervisors and coworkers. Dr. Lyons opined that Gaston could frequently lift or carry fewer than 10 pounds, could occasionally lift or carry 10 pounds, could stand, walk, or sit for two to four hours in an eight-hour workday, could occasionally perform all postural

5

activities, and could perform limited reaching and work around hazards. Dr. Lyons concluded that Gaston's impairments prevented her from performing her previous work and all other gainful work.

2. <u>Gaston's Testimony</u>

At the hearing before the ALJ, Gaston testified that she had chronic depression and problems with anxiety, memory, and attention. Gaston stated that she took Remeron, an anti-depressant, and Lunesta, a sleep aid. Gaston testified that her attention problems prevented her from completing tasks. Gaston stated that she enjoyed reading but noted that she could not stay focused on one book and continually went to the library to locate books that held her attention. In addition, Gaston testified that she enjoyed quilting, needlework, and scrap booking. However, Gaston noted that she could not work on these projects for more than three hours before losing focus. Gaston stated that she did all of the household cooking. Gaston also stated that she went grocery shopping weekly but indicated that she sometimes had panic attacks around unfamiliar settings or people. Finally, Gaston testified that she did household chores such as washing dishes, mopping, dusting, and laundry.

3. <u>Vocational Expert Testimony</u>

The vocational expert at the second hearing testified that an individual of Gaston's age and vocational background who could lift or carry 20 pounds occasionally and 10 pounds frequently, had the option to sit or stand while working, could stand or walk no more than a total of half of an eight-hour workday, could perform postural activities occasionally, and could perform work with no closely regimented pace of production, no close supervision, and no intense public contact would be able to perform the unskilled jobs of laundry folder, bakery

production worker, and a small products assembler. Under the same hypothetical, a vocational expert from the first hearing testified that such an individual could also perform work as a classifier/sorter, a photocopy machine operator, and a checker.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to her conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

C. Gaston's Motion for Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Gaston must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of

7

impairments, (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, (4) the claimant's residual functional capacity leaves him unable to perform her past relevant work, and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make her determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found that Gaston has severe impairments of status post motor vehicle accident, with traumatic brain injury and fractures of the left hip, left patella, and left femur; depression; and anxiety. The ALJ determined that Gaston's impairments or combination of impairments were not listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Gaston's RFC allowed her to perform a restricted range of light work. Specifically, the ALJ determined that Gaston could lift twenty pounds occasionally and ten pounds frequently, could not reach extreme postures more than occasionally, required the opportunity to sit or stand while working,

8

could not be required to stand or walk more than fifty percent of an eight-hour workday, and was not able to work in areas requiring a closely regimented pace of production or intense contact with the public or strangers. As a result, the ALJ determined that Gaston could perform some of her past relevant work. In addition, using the Medical-Vocational Rules ("Grid Rules"), the ALJ concluded that there also existed a significant number of jobs in the national economy that Gaston could perform. Consequently, the ALJ determined that Gaston was not disabled.

The issues this Court must resolve are: whether the ALJ correctly assessed Gaston's credibility; whether the ALJ correctly discounted the opinions of her treating physician Dr. Lyons; whether the ALJ assessed Gaston's RFC based upon the medical evidence; and whether the ALJ properly included Gaston's brief work at Timberland as past relevant work when making his step four determination.

1. The ALJ's determination that Gaston's testimony was not fully credible was supported by substantial evidence.

Gaston criticizes the ALJ's credibility determination as unsupported by substantial evidence in the record. Upon review, however, this Court finds the ALJ's determination to be substantially supported and sufficiently explained to prevent remand.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, her credibility determinations are given special deference, and as a result, her credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds her credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding.

9

Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. Clifford, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

In support of his credibility finding, the ALJ cited numerous examples of Gatson's tendency to exaggerate her limitations. For example, the ALJ cited treatment notes from Gatson's first hospitalization in which the treating psychiatrist found Gatson's behavior and demeanor to not match her alleged mental discomfort and memory impairment. The ALJ cited the similar treatment notes of Gatson's counselor advising against hospitalization, opining that Gatson sought hospitalization in order to seek attention from family members. Further, the ALJ noted the treatment notes of Dr. Budzenski, in which Dr. Budzenski suspected that Gatson was not fully exerting herself in a grip strength test.

In addition, the ALJ cited inconsistencies in Gatson's testimony. In particular, the ALJ cited Gatson's simultaneous assertions that she could not maintain concentration but also admitted the ability to read for several hours at a time. Finally, the ALJ cited inconsistencies between the testimony of Gatson's husband, that Gatson had trouble with numbers and expression, and the facts, that Gatson was responsible for paying the couple's bills and that

Gatson speech was clear at her consultative physical examination and at both hearings before the ALJ.

Gatson does not challenge the ALJ's conclusion regarding the identified inconsistencies. Instead, Gatson makes a blanket challenge that the ALJ's credibility finding is not substantially supported by either objective or subjective evidence. This Court disagrees.

It is undisputed that the ALJ provided numerous examples of inconsistences to support his credibility determination. Contrary to Gatson's thin assertion, the ALJ did so through examples from both the objective medical evidence and treatment notes and the subjective testimony of Gatson and her husband. Consequently, this Court concludes that the ALJ's credibility determination was reasonable, substantially supported, and sufficiently articulated.

2. <u>The ALJ's decision to discount the opinion of Gaston's treating physician was supported by substantial evidence.</u>

Next, Gaston argues that the ALJ improperly discounted Dr. Lyons' opinion. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 376 (7th Cir. 2006). More weight is generally given to the opinion of a treating physician because she is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 416.927(d)(2); <u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. <u>Dixon v. Massanari</u>, 270 F.3d 1171, 1177 (7th Cir. 2001). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. <u>Clifford</u>, 227 F.3d at 870. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's

evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377.

Gatson's specific objection is that the ALJ improperly discredited Dr. Lyons' opinion because it was based on Gatson's subjective complaints. However, a plain reading of the ALJ's opinion reveals that the ALJ did not rely on that analysis at all when discounting Dr. Lyons' opinion.

Instead, the ALJ discredited Dr. Lyons' opinion because the limitations laid out by Dr. Lyons would not classify Gatson as disabled under applicable Social Security Disability law. For example, the ALJ noted Dr. Lyons' findings that Gatson remained capable of standing/walking between two and four hours in an eight-hour workday and that Gatson could sit for the same amount of time. In addition, the ALJ noted Dr. Lyons' findings that Gatson was only restricted from "frequent" reaching and was not totally limited by environmental factors. As a result, the ALJ noted that, despite Dr. Lyons' lay conclusion regarding disability, Dr. Lyon's actual medical findings did not preclude work activity under the applicable regulations.

This Court considers the ALJ's distinguishing of the record evidence to be entirely appropriate in this case, as the decision regarding disability remains that of the Commissioner and not of the claimant's treating physician. As such, the ALJ did not error in drawing a distinction between Dr. Lyons' lay opinion regarding Gatson's disability and the legal standards for determining disability. In this case, the ALJ reasonably found that, contrary to Dr. Lyons' opinion, Dr. Lyons' medical findings actually supported some remaining ability to work.

In addition to these findings, the ALJ also noted inconsistencies between Dr. Lyons' assessment of Gatson's remaining lifting ability and Gatson's treatment records, which evidenced full motor strength in Gatson's upper extremities and fully healed fractures. Based on

12

these discrepancies, the ALJ acted reasonably in his decision to discount Dr. Lyons' opinion, as an ALJ is entitled to discount a treating physician's opinion when inconsistencies exist between the treating physician's opinion and the record evidence. See Clifford, 227 F.3d at 870.

For these reasons, this Court concludes that the ALJ did not error in affording the opinion of Dr. Lyons lesser weight.

3. The ALJ's RFC determination was supported by substantial evidence.

Gaston also thinly asserts that there is no evidence to support the ALJ's RFC determination. This Court finds this argument to be entirely without merit. In the immediate case, the ALJ proffered over twelve pages of evidence review, discussing both the objective medical evidence and the subjective testimony. Indeed, this Court finds that the ALJ did an exemplary job of thoroughly discussing and weighing the record evidence in Gatson's case.

In contrast, Gatson submits a four-sentence, blanket assertion that no evidence supports the ALJ's conclusion. In making her argument, however, Gatson fails to point to any evidence that she believes was not considered by the ALJ and she fails to identify any specific examples where the ALJ allegedly mis-weighed the record evidence.

Gatson's unsupported argument, in the face of a truly exhaustive review of the evidence by the ALJ, is entirely unpersuasive. Instead, this Court concludes that the ALJ more-than adequately supported his RFC determination and sufficiently articulated his legal reasoning.

4. The ALJ inclusion of Gaston's work at Timberland as past relevant work was, at worst, harmless error.

Finally, Gatson argues that the ALJ erred in including Gatson's past work at Timberland as past relevant work. Specifically, Gatson contends that the her work at Timberland should not have been considered past relevant work because she did not work at the job long enough to

learn the job. As such, Gatson argues that the ALJ should not have concluded that she could do past work as an office worker as part of the ALJ's step four determination.

To begin, this Court notes that Gatson does not dispute that she had other past relevant work as a business office manager and performing accounting duties for a bank and a municipality. Gatson does not argue that these jobs would not also qualify as office work under the regulations. As such, even if Gatson's argument regarding her work at Timberland has merit, it appears that Gatson had several past relevant work positions that arguably qualify as office work. Accordingly, this Court is not persuaded that the ALJ's determination regarding Gatson's ability to do past relevant work as an office worker is in error, regardless of the ALJ's purported inclusion of Gatson's work at Timberland.

Further, and even more persuasive in this case, this Court notes that the ALJ additionally made a step five determination regarding Gatson's ability to perform other work in the community, which was entirely independent of the ALJ's classification of Gatson's work at Timberland as past relevant work. This Court additionally notes that Gatson does not challenge the ALJ's step five conclusion. As a result, because Gatson does not contest the ALJ's finding that Gatson can also perform additional work in the community at step five, the ALJ's step four determination, even if errant, is no more than harmless error.

### III. CONCLUSION

The ALJ's determination that Gaston was not credible was supported by substantial evidence. In addition, the ALJ's decision to afford the opinion of Dr. Lyon less weight was reasonable. Further, the ALJ's consideration of Gaston' RFC was supported by substantial evidence and sufficiently articulated. Finally, the ALJ's step four determination, that Gatson

could perform past relevant work as an office worker, even if inaccurately based upon Gatson's work at Timberland, amounts to no more than harmless error. Consequently, for the aforementioned reasons, this Court **RECOMMENDS** that Gaston's request for remand be **DENIED**. [Doc. No. 1].

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED**.

Dated this 21st Day of April, 2010.

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge